Affirmed.

LENROOT, Associate Judge, sat during the argument of this case, but resigned before the opinion was prepared.

31 C.C.P.A. (Patents)

## In re KUSS et al.

### Patent Appeals No. 4903.

Court of Customs and Patent Appeals.
June 26, 1944.

Edward P. Gilheany, of New York City (Stevens & Davis, of Washington, D. C., of counsel), for appellants.

W. W. Cochran, of Washington, D. C., for Commissioner of Patents.

T. A. Hostetler, of Washington, D. C. (Bernard F. Garvey, of Washington, D. C., of counsel), for Alien Property Custodian.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 1 to 7, inclusive, and 17 in appellant's application for a patent for an alleged invention relating to a method of preparing pure zinc compounds from impure zinc compounds.

Claims 1, 3, and 6 are sufficiently illustrative of the appealed claims. They read:

"1. Process for the manufacture of a zinc compound which comprises electrolyzing with a mercury cathode an impure zinc containing aqueous liquid, whereby an impure, zinc-containing amalgam is obtained, separating the amalgam obtained from the liquid, treating the amalgam to decompose the amalgam only partially and to form a zinc compound, and separating the zinc compound obtained from the amalgam.

"3. Process for the manufacture of a zinc compound which comprises electrolyzing with a mercury cathode an impure zinc containing aqueous liquid, whereby an impure, zinc-containing amalgam is obtained, separating the amalgam obtained from the liquid, treating the amalgam with an acid to decompose the amalgam only partially and to form a zinc salt and separating the zinc salt obtained from the amalgam.

"6. Process for the manufacture of a zinc compound which comprises electrolyzing with a mercury cathode an impure zinc containing aqueous liquid, whereby an impure, zinc-containing amalgam is obtained, separating the amalgam obtained from the liquid, leading a sulphuric acid solution in turbulent flow over the amalgam, to decompose said amalgam only partially and to form a suspension of zinc sulfate causing the suspended zinc sulphate to settle, separating the settled zinc sulphate from the supernatant liquid and drying it."

The references are: Betts, 791,401, May 30, 1905; Field, 1,429,131, Sept. 12, 1922; Stevens et al., 1,843,006, Jan. 26, 1932; Lanzetti, 2,227,547, Jan. 7, 1941; "Textbook of Inorganic Chem." by Friend—Vol. III part 2, page 154; Zeitschrift fur Anorganische and Allgemeine Chemie Vol. 171, pages 83–85.

It appears from appellants' application that one step in their process consists in electrolyzing an aqueous solution of an impure zinc compound with a mercury cathode to obtain an impure zinc-containing amalgam at the mercury cathode.

Appellants' aqueous solution of impure zinc compounds contains large quantities of chlorides of sodium, calcium, and magnesium, and small quantities of copper, cadmium, cobalt, nickel, and iron. In the electrolyzing process, the metals above zinc in the electromotive series are not deposited at the mercury cathode, whereas the metals below zinc in the electromotive series are deposited with the zinc at the mercury cathode to form an impure zinc amalgam. In order to free the zinc from the metals below it in the electromotive series, the amalgam is treated with acid, particularly sulphuric acid, in such manner as to partially decompose it and remove only a portion of the zinc therefrom. The pure zinc compound thus obtained is then separated from the amalgam. Zinc being the highest metal in the electromotive series in the amalgam, it is the first metal to be attacked when the amalgam is treated with acid, and the reason for only partially decomposing the amalgam is that by leaving some of the zinc in the amalgam the contaminating metals are not subjected to the reaction of the acid. Should all of the zinc be removed from the amalgam, the sulphuric acid would then attack the contaminating metals, and, instead of securing a pure zinc compound, an impure zinc compound would result.

The patent to Betts discloses a process for extracting zinc from its ores. The patentee discloses a process of obtaining pure zinc from a solution of zinc sulphate or other zinc salt by subjecting the solution to electrolytic action with a cathode of mercury or mercury-containing zinc. The solution is decomposed by electrolysis and the zinc is deposited on the cathode, forming a mercury-zinc amalgam. The amalgam is then placed in another cell where it is used as the anode and is again subjected to electrolysis. As a result of the patentee's process, the zinc is removed from the amalgam and deposited on the cathode *as pure metallic zinc.*

It will thus be seen that Betts does not disclose a process for obtaining a zinc compound from the amalgam.

It may be stated at this point that counsel for appellants insist that the starting material in the Betts patent is a *pure,* rather than an *impure,* "zinc-containing aqueous liquid," and that, therefore, Betts does not disclose the first step in appellants' process. Owing to the views we hold, it is unnecessary that we determine that issue.

In view of the fact that the patent to Betts does not disclose the third step in appellants' process, that is, treating the amalgam to partially decompose it and form a zinc compound, the examiner cited the Zeitschrift publication which, he stated, discloses that step.

The Zeitschrift publication discloses that zinc can be removed from an amalgam by treating the amalgam with hydrochloric acid. However, it does not suggest how the amalgam might be treated with acid so as to obtain a pure zinc compound.

The examiner cited the patent to Field only for the purpose of showing "that a salt solution or slightly acid solution acts preferentially on the zinc of the mercury-zinc amalgam."

The Field patent discloses a process of purifying zinc sulphate solutions by treating them with an amalgam of mercury and zinc, "or," as stated by the examiner, "some other metal higher in the electromotive series than mercury, the zinc going into solution and displacing the metallic impurities which are precipitated on the amalgam." There is nothing in that patent, however, to suggest partially decomposing an amalgam.

The patent to Lanzetti was cited by the examiner as disclosing a reaction similar to that of applicants, the examiner stating, in substance, that Lanzetti discloses that a mercury-sodium amalgam is formed by a process of electrolysis; that the amalgam is then "reacted with sulfur in suspension or with sodium polysulfide to form sodium sulfide"; and that in order to "avoid the reaction of the sulfur or sulfide with the mercury instead of the zinc an excess of amalgam should always be present and the sodium in the amalgam should never be completely decomposed."

There is no suggestion in the Lanzetti patent that if impurities were present they would not be decomposed by the reacting agent which was employed to decompose the amalgam.

The patent to Stevens et al. and the "Textbook of Inorganic Chem." by Friend were cited as showing that some of the steps in some of the claims were old.

Those references do not disclose the complete process defined in any of the appealed claims.

The Board of Appeals relied on the patent to Betts and the Zeitschrift publication for its rejection of all of the claims, except that it cited the Friend publication which, it stated, shows that it is "old to remove excess sulphuric acid from zinc sulphate by heating it to about 500° C," which is one of the steps defined in claim 7.

It may be stated that claim 7 also covers the process defined in claim 6. Accordingly, the Friend publication meets only the last step in claim 7.

We have given careful consideration to the decisions of the tribunals of the Patent Office, as well as the arguments in the brief of the solicitor, but are unable, for the reasons hereinbefore stated, to concur in the views that the appealed claims are not patentable over the references of record.

For the reasons stated, the decision of the Board of Appeals is reversed.

Reversed.